**Appeal No. 17-72682**

---

## UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

---

DAN FARR PRODUCTIONS, DANIEL FARR,
and BRYAN BRANDENBURG, *Defendants–Petitioners,*

v.

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF CALIFORNIA, *Respondent,*

SAN DIEGO COMIC CONVENTION, *Plaintiff–Real Party in Interest.*

---

From the United States District Court for the Southern District of California
Case No. 3:14-cv-01865

---

## REPLY IN SUPPORT OF PETITION FOR WRIT OF MANDAMUS

---

MICHAEL I. KATZ
*mkatz@mabr.com*
L. REX SEARS
*rsears@mabr.com*
    MASCHOFF BRENNAN PLLC
20 Pacifica, Suite 1130
Irvine, California 92618
Telephone: (435) 252-1360

*Attorneys for Defendants–Petitioners*

# TABLE OF CONTENTS

I.    INTRODUCTION ...........................................................................1

II.   ARGUMENT ..................................................................................2

    A.  SDCC Advocates the Wrong Standard of Review ...........................2

    B.  SDCC's Public Relations Problem Cannot Justify a
        Prior Restraint ..........................................................................3

    C.  SDCC's Arguments in Defense of the Second Order Fail ...............5

        1.  *Levine* Did Not Overrule *Nebraska Press* ......................................7

        2.  No Threat to the Jury Pool Was Shown, Under
            *Any* Standard ..................................................................10

        3.  The Risk of Juror Misconduct Cannot Justify *Pre*trial
            Restraints ........................................................................12

    D.  SDCC's Arguments in Defense of the Third Order Fail .................14

        1.  The Second Suppression Order Did Not Require any
            Retroactive Purge ..........................................................14

        2.  The Third Suppression Order Is a Criminal Sanction ............16

    E.  SDCC Ignores the District Court's Oral Orders About Public
        Documents ..............................................................................18

    F.  The District Court's Explanation of the Disclaimer
        Requirement Has Nothing to Do with a Threat to the
        Administration of Justice ....................................................19

III.  CONCLUSION ...........................................................................21

CERTIFICATE OF COMPLIANCE ...................................................22

CERTIFICATE OF SERVICE ...........................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Axson-Flynn v. Johnson,*
356 F.3d 1277 (10th Cir. 2004) ........................................................20

*In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation,*
101 F.R.D. 34 (C.D. Cal. 1984) ...................................................5, 12

*Edwards v. Coeur d'Alene,*
262 F.3d 856 (9th Cir. 2001) ..............................................................5

*Elliott v. Google, Inc.,*
860 F.3d 1151 (9th Cir. 2017) ............................................................2

*Hunt v. NBC,*
872 F.2d 289 (9th Cir. 1989) ..............................................................8

*Levine v. United States District Court,*
764 F.2d 590 (9th Cir. 1985) ....................................................*passim*

*Nebraska Press Association v. Stuart,*
427 U.S. 539, 96 S. Ct. 2791, 49 L. Ed. 2d 683 (1976) .....................7, 9, 10, 11

*Organization for a Better Austin v. Keefe,*
402 U.S. 415, 91 S. Ct. 1575, 29 L. Ed. 2d 1 (1971) ........................11

*Rodríguez-Vázquez v. Solivan,*
844 F.3d 351 (1st Cir. 2016) .............................................................16

*Southeast Promotions, Ltd. v. Conrad,*
420 U.S. 546, 95 S. Ct. 1239, 43 L. Ed. 2d 448 (1975) ......................9

*Whittaker Corp. v. Execuair Corp.,*
953 F.2d 510 (9th Cir. 1992) .............................................................17

**Other Authorities**

Erwin Chemerinsky, *Lawyers Have Free Speech Rights, Too: Why Gag Orders on Trial Participants Are Almost Always Unconstitutional*, 17 LOYOLA L.A. ENTERTAINMENT LAW JOURNAL 311 (1997) .......................10

# I.    INTRODUCTION

Petitioners seek relief from the second and third in a series of three suppression orders entered by the district court. SDCC[1] calls them "Suppression Order" and "Amended Order," respectively.[2] SDCC's labels could be misleading: a few days after first issuing its third suppression order, the district court changed some briefing deadlines in a document whose title begins "Amended Order …"[3] But the so-called Amended Order replaces only the original version of the third order; it is not a superseding amendment of the second order. Instead, although their terms overlap and the later order was entered to punish perceived violations of the earlier, both the second and third orders continue in force as mutually independent burdens on petitioners' free-speech rights.

---

[1] Terms defined in the Petition for Writ of Mandamus ("Petition," Dkt. 1-1) are used with the same meaning herein. As in the original Petition, district court filings will be cited by "ECF Doc." number; filings in this Court will be cited by "Dkt." number and internal page numbering.

[2] *See* "Answer of Real Party in Interest …" ("Answer," Dkt. 6) 10-15, 17.

[3] *See* ECF Docs. 262, 264.

As SDCC concedes, mandamus relief is proper if the district court clearly erred.[4] The original Petition exposed clear error in the district court's orders and as shown below, SDCC's Answer does not rebut that showing.[5] Therefore this Court should intervene.

## II.    ARGUMENT

### A.    SDCC Advocates the Wrong Standard of Review

SDCC assumes the district court's suppression orders are reviewed for abuse of discretion.[6] But petitioners have already shown that "appropriate appellate protection of First Amendment values" requires

---

[4] *See* Answer 18-19.

[5] SDCC's Answer has other failings, too. For example, it claims SDCC's event is "known as the Comic-Con convention." Answer 1. SDCC's convention has gone by many names—starting with "San Diego's Golden State Comic-Con"; then "San Diego Comic-Con," "San Diego Comic Convention," and "Comic Con International: San Diego," among others—but never "the Comic-Con convention." SDCC never used "Comic-Con" as an adjective before, even in the district court; but SDCC now realizes that "if a trademark is used as an adjective, it will typically be easier to prove that the trademark is performing a source identifying function." *See Elliott v. Google, Inc.*, 860 F.3d 1151, 1158 n. 3 (9th Cir. 2017). However, like much else in SDCC's Answer and 1,742 pages of accompanying exhibits, that is beside the point here. Petitioners will pass over in silence other disputes that do not relate directly to the weighty First Amendment questions raised by the suppression orders at issue in *this* proceeding.

[6] *See* Answer 1, 18-19.

2

independent, de novo review—which extends even to the factual findings the district court made in support of its suppression orders.[7] SDCC ignores petitioners' analysis and authorities, and cites no authority for its own contrary *assumption* that this Court should review for abuse of discretion.

This Court's review is de novo.

## B. SDCC's Public Relations Problem Cannot Justify a Prior Restraint

SDCC's primary, overarching argument—or at least its *lengthiest*—is that petitioners were properly restrained because they "posted material and made statements that are designed to tarnish the reputation of SDCC and thereby influence the public (including the jury pool) regarding who should prevail in this litigation."[8]

Any effort "to win this case 'in the court of public opinion'"[9] is beside the point because *that* "court" is not the district court sitting in San Diego and petitioners' interest in public opinion is wholly unrelated to the San

---

[7] *See* Petition 5-6 (citing and quoting *Bose Corp. v. Consumers Union*, 466 U.S. 485, 501, 104 S. Ct. 1949, 80 L. Ed. 2d 502 (1984); *Newton v. NBC*, 930 F.2d 662, 670 (9th Cir. 1990); and *Daily Herald Co. v. Munro*, 838 F.2d 380, 383 (9th Cir. 1988)).

[8] Answer 19 (italics added); *see generally* Answer 19-27.

[9] *See* Answer 19.

Diego jury pool. First, over the three years that have passed since SDCC sued them, petitioners produced five events under the shadow of SDCC's claims. Rather than let the talent they want to book for their events and the fans (primarily Utahn) who might buy tickets think petitioners are doing something wrong, petitioners prefer to explain that they are standing up to a bully who is prosecuting baseless charges. Second, petitioners hope to obtain monetary and other needed support for the upcoming trial, such as live trial appearances in lieu of appearance by deposition, both from sympathetic fans in Utah and the hundred other places *outside* of San Diego where comic cons are held,[10] and from producers of those other comic cons—whose interests are also threatened because, like petitioners, they started and named their shows in light of SDCC's decades-long acquiescence in widespread third-party use of "comic con."

Petitioners' public relations campaign could not justify any prior restraint because "[i]t is not the duty of federal courts to accommodate the

---

[10] *See* ECF Doc. 253 at 19:20-23 ("'comic cons' are held in nearly every state … over 100 competitors us[e] … Plaintiff's trademark").

public relations interests of litigants."[11] Instead, "the district court's order[s] may be upheld only if … the activity restrained poses either a clear and present danger or a serious and imminent threat to a protected competing interest."[12] When such balancing is performed, "the First Amendment demands … 'tangible evidence' that speech-restrictive regulations are 'necessary' to advance the proffered interest."[13] Here *no* evidence was offered by SDCC or cited by the district court that petitioners' speech threatens the integrity of the jury pool.

## C.    SDCC's Arguments in Defense of the Second Order Fail

Petitioners have shown the district court's second suppression order is unconstitutionally vague because its nominal restraints on petitioners' speech are inconsistent with the disclaimer that the order requires petitioners to post.[14] SDCC does not deny the inconsistency but argues it does not matter because the disclaimer "is intended for readers of the Salt

---

[11] *See In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation*, 101 F.R.D. 34, 40 (C.D. Cal. 1984).

[12] *Levine v. United States District Court*, 764 F.2d 590, 595 (9th Cir. 1985).

[13] *See Edwards v. Coeur d'Alene*, 262 F.3d 856, 863 (9th Cir. 2001).

[14] *See* Petition 19-20.

Lake Comic Con website" and "does not alter the clear prohibition directed to Defendants."[15] But if the disclaimer "does not alter" the restrictions on petitioners' speech then petitioners have been ordered to post a false disclaimer, one that misdescribes what petitioners were ordered to do. Unless this Court accepts SDCC's imputation to the district court of an order to post a false disclaimer, it must reject SDCC's attempt to save the second suppression order from vagueness.

Petitioners also showed the second order is not narrowly drawn because its (unsupported) findings go only to Mr. Brandenburg's social-media commentary about fraud, but the restraints it imposes are much broader.[16] SDCC responds that the district court's finding of "a serious and imminent threat to SDCC's right to a fair trial" "was not limited to comments by Defendant Brandenburg on fraud."[17] The issue is not how broadly the district court worded its finding but what the evidence shows; and none of the evidence cited by either the district court in its order or

---

[15] *See* Answer 27-28.

[16] *See* Petition 32-33.

[17] *See* Answer 28.

SDCC in its Answer reaches beyond Mr. Brandenburg's social-media commentary about fraud.

Finally, petitioners showed that the second suppression order was not necessitated by any "serious and imminent threat to the administration of justice."[18] SDCC responds by advocating a weaker legal standard and positing a threat *not* to the jury *pool* but to the integrity of the jury, once empaneled. As shown below, both arguments fail.

### 1. *Levine* Did Not Overrule *Nebraska Press*

SDCC tries to sidestep controlling authority about pretrial publicity in populous metropolitan areas by advocating an incorrect legal standard. According to SDCC, this Court in *Levine* "rejected the notion that a suppression order can be upheld only if there is a showing that an impartial jury cannot be selected."[19] But that "notion" comes from the Supreme Court's ruling in *Nebraska Press Association v. Stuart*.[20] As this Court reiterated years after *Levine*: "*Nebraska Press* … allows a prior restraint only if its absence would prevent securing twelve jurors who

---

[18] *See* Petition 20-32.

[19] Answer 30.

[20] 427 U.S. 539, 96 S. Ct. 2791, 49 L. Ed. 2d 683 (1976).

could, with proper judicial protection, render a verdict based only on the evidence admitted during trial."[21] Obviously *Levine* could not have rejected controlling Supreme Court authority.

SDCC overlooks that *Levine* dealt with an order "prohibit[ing] … *attorneys* … from communicating with the media regarding the merits of the case."[22] Here, by contrast, the district court's orders prohibit speech by party defendants.[23] That distinction makes all the difference.

According to *Levine*:

> The Supreme Court has suggested that it is appropriate to impose greater restrictions on the free speech rights of trial participants than on the rights of nonparticipants. The case for restraints on trial participants is especially strong with respect to attorneys.[24]

Six years after *Levine*, in *Gentile v. State Bar of Nevada*, the Supreme Court expressly held "that the speech of lawyers representing clients in pending cases may be regulated under a less demanding standard than that

---

[21] *Hunt v. NBC*, 872 F.2d 289, 295 (9th Cir. 1989).

[22] *Levine*, 764 F.2d at 591 (italics added).

[23] Petitioners' speech about the case was not instigated or programmed by counsel, and neither SDCC nor the district court ever suggested otherwise.

[24] *Levine*, 764 F.2d at 595 (citations omitted).

established … in *Nebraska Press*."[25] *Gentile* dealt with after-the-fact punishment, not a prior restraint, and "[t]he presumption against prior restraints is heavier … than that against limits on expression imposed by criminal penalties."[26] But even if *Gentile* supports a lower standard for prior restraints on attorneys, that cannot be extrapolated to party defendants because "[a]s officers of the court, … attorneys have a fiduciary responsibility not to engage in public debate that will redound to the detriment of the accused or that will obstruct the fair administration of justice"[27]—and that responsibility does not extend to the litigants.

---

[25] 501 U.S. 1030, 1074, 111 S. Ct. 2720, 115 L. Ed. 2d 888 (1991)

[26] *Southeast Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558-59, 95 S. Ct. 1239, 43 L. Ed. 2d 448 (1975).

[27] *See Gentile*, 501 U.S. at 1074 (quoting *Nebraska Press*, 427 U.S. at 601, n. 27 (Brennan, J., concurring in the judgment)). Similarly, *Levine* cited the *Model Rules of Professional Conduct*, *ABA Standards for Criminal Justice*, and *Model Code of Professional Responsibility*—which regulate the conduct of attorneys, not their clients—as guides for what "it would be appropriate to proscribe." *See Levine*, 764 F.2d at 599. *Gentile* continued: "Because lawyers have special access to information through discovery and client communications, their extrajudicial statements pose a threat to the fairness of a pending proceeding since lawyers' statements are likely to be received as especially authoritative." *Gentile*, 501 U.S. at 1074. Party litigants do not have the same "special access to information through discovery": here, for example, a two-tiered protective order allows petitioners' counsel, but not petitioners, to view material designated attorneys' eyes only, *see* ECF No. 46 at 5:13-15—and SDCC has used that designation liberally. Plus, instead

For party defendants — as opposed to their counsel — there is no precedent for deviating from the *Nebraska Press* standard; and there should be no temptation to deviate, here, because petitioners did not invoke the judicial machinery but have instead been haled into court (in a foreign jurisdiction).[28]

**2. No Threat to the Jury Pool Was Shown, Under *Any* Standard**

"The difference between the [*Nebraska Press*] requirement of serious and imminent threat" and *Gentile*'s supposedly less-demanding "substantial likelihood of material prejudice" standard "could prove mere semantics."[29] At a minimum, "[e]ach standard requires an assessment of proximity and degree of harm."[30] Here, the evidence certainly showed that petitioners were speaking about the case, sometimes passionately and

---

of being "received as especially authoritative," statements from party litigants are more likely to be discounted as biased.

[28] *See* Erwin Chemerinsky, *Lawyers Have Free Speech Rights, Too: Why Gag Orders on Trial Participants Are Almost Always Unconstitutional*, 17 LOYOLA L.A. ENTERTAINMENT L.J. 311, 324 n. 89 (1997) ("An argument may be made that parties waive some of their speech rights by consenting to the court's jurisdiction. This argument, however, can only be applied to those who invoke the court's jurisdiction: plaintiffs in civil cases and the government as prosecutor in criminal cases.").

[29] *See Gentile*, 501 U.S. at 1037 (Kennedy, J., concurring in the judgment).

[30] *See id.*

pointedly — but there was no separate showing of threatened harm, either serious and imminent or substantially likely, to the jury pool.

SDCC tries to bridge the gap between publicity and harm with this passage from *Levine*: "The potential for injury to the integrity of the judicial process is significant in cases involving trial publicity."[31] But SDCC cannot extract from *Levine* a presumption that publicity is injurious without bringing *Levine* into conflict with *Nebraska Press*, which held: "pretrial publicity, even if pervasive and concentrated, cannot be regarded as leading automatically … to an unfair trial."[32]

Allowing prior restraints to be imposed on a mere showing of pretrial publicity, without a separate showing that *this* publicity poses an unusual threat to the judicial process, would carve out from the "'heavy presumption' against … constitutional validity" that the Supreme Court indulges against "*[a]ny* prior restraint"[33] a presumption in *favor* of prior restraints against pretrial publicity. Thus SDCC would replace the robust

---

[31] *See* Answer 29; *Levine*, 764 F.2d at 597. Although not so identified by SDCC, the passage is a direct quotation.

[32] *See Nebraska*, 427 U.S. at 565.

[33] *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419, 91 S. Ct. 1575, 29 L. Ed. 2d 1 (1971).

First Amendment free-speech right of every litigant with a shabby, limited

indulgence that endures only so long as it is not exercised to any great

degree. But that would be contrary to controlling Supreme Court precedent

and an unwarranted extension of *Levine*'s limited holding about restraints

on attorney speech.

### 3. The Risk of Juror Misconduct Cannot Justify *Pre*trial Restraints

SDCC also tries to justify the second suppression order by observing

that the district court "was concerned with both: (1) the threat to selection

of an impartial jury, and (2) the risk that jurors would find improper

material online."[34] Petitioners showed that San Diego's size and

metropolitan character tell decisively against any supposed "threat to

selection of an impartial jury."[35] But according to SDCC, the risk of jurors

disregarding their instructions by obtaining information online justifies the

district court's suppression order, "regardless of San Diego's 'metropolitan

---

[34] *See* Answer 31.

[35] *See* Petition 23-29.

character' and regardless of whether the venire is currently being influenced."[36]

This argument fails because the district court's suppression order is not tailored to juror contamination. The district court is already controlling for "the threat to selection of an impartial jury" with a jury questionnaire.[37] Any further risk that jurors not screened out by the questionnaire (or voir dire) would later "find improper material online" would be addressed by an order that goes into effect on the first day of trial, when the venire is called—not months before; and such an order would be limited to publicly accessible internet postings—instead of comprehensively prohibiting comment without regard to the medium of communication, like the district court's second suppression order does.

SDCC's arguments in support of the second suppression order all fail.

---

[36] *See* Answer 32.

[37] *See* Petition 28.

13

**D.**     **SDCC's Arguments in Defense of the Third Order Fail**

**1.**     **The Second Suppression Order Did Not Require any Retroactive Purge**

The district court imposed its third suppression order to sanction petitioners for not purging from the SLCC website a page with information about the litigation, in response to the second suppression order.[38] That was error because the second order was worded prospectively[39] and the district court *rejected* a proposed revision by SDCC that would have required petitioners to retroactively purge the Litigation Page.[40]

SDCC's primary response is that petitioners also violated the second order's disclaimer requirement.[41] But the district court was clear about why petitioners were sanctioned, and it had nothing to do with the disclaimer:

> [T]he web page … runs afoul of the order which … restricted statements about whether comic con is descriptive, statements about abandonment, statements about fraud. And, you know, they continue to persist.
>
> Not that they were posted after the court's orders, but they have remained …

---

[38] *See* Petition 15-17.

[39] *See* Order 147 at 22-24 ("the Court … issues a suppression order that prohibits Defendants from making comments on [suppressed] topics").

[40] *See* Answer 33-35

[41] *See* Answer 32-25, 37.

14

> … [T]he selective printing of documents, posting of documents … the resource material, the commentary, the summaries, all run afoul.
>
> So I do find that the defense is in violation … I am going to sanction them for violating the orders …
>
> … I'm going to, as a sanction, order the purging … of all comments and commentaries with regard to the litigation.[42]

Because the district court imposed the third suppression order as a sanction for purportedly violating the second order's "restrict[ion] [on] statements about whether comic con is descriptive, … abandonment, … fraud," by allowing the Litigation Page "to persist," SDCC cannot save the third order by arguing that petitioners engaged in some *other* conduct that violated some *other* provision of the second order.[43]

SDCC also tries to save the district court's actual finding relating to violation of the second order by arguing:

> Defendants' maintenance of this section of the website is antithetical to the intent and purpose of the Suppression Order. There is no difference between publishing new

---

[42] September 21 Transcript at 97:24-99:4.

[43] SDCC's disclaimer-related allegations are also belied by the record. For example, SDCC alleges "[t]he required disclaimer does not appear on Salt Lake Comic Con's … Twitter feed," Answer 15—but the district court recognized that it does, *see* Order 215 at 2:12-19.

content that violates the Suppression Order and maintaining existing content that does the same.[44]

But prior restraints "are narrowly construed" and "we eschew any broad reading of the court's order when determining whether [complained-of conduct] violated it."[45] Petitioners were bound by the letter of the district court's second order, which was prospective, not some unarticulated "intent and purpose" behind it—and the prospective letter did not require a retroactive purge.

### 2. The Third Suppression Order Is a Criminal Sanction

The third suppression order amounts to a criminal sanction imposed without due process, for a perceived violation of the second suppression order.[46] SDCC argues the third order is "remedial," hence civil, because it is "directed at safeguarding SDCC's right to a fair trial."[47] SDCC's rejoinder misses the point. The relevant inquiry is not: does the third order serve *any* remedial purpose? Instead the inquiry is: does the third order, which was

---

[44] Answer 36.

[45] *See Rodríguez-Vázquez v. Solivan*, 844 F.3d 351, 355 (1st Cir. 2016).

[46] *See* Petition 35-38.

[47] *See* Answer 37-38.

imposed as a sanction for violating the second, (1) coerce future compliance with the second or (2) punish past noncompliance with the second?[48]

"If a sanction operates whether or not a party remains in violation of the court order, it does not coerce compliance."[49] The third order continues to operate, even though the predicate "violation" of the second order has been cured (by takedown of the Litigation Page[50]). Therefore the third order is a criminal sanction and petitioners were denied due process.[51]

The third suppression order (including the attorney fee award) should be vacated because (1) prior restraints are not proper sanctions for noncompliance with a court order,[52] (2) the violation on which the third order was predicated never happened, and (3) the third order is a criminal sanction imposed without due process.

---

[48] *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 517 (9th Cir. 1992).

[49] *Id.* at 517.

[50] *See* Order 264 at 2:26-28.

[51] *See* Petition 38.

[52] *See* Petition 35.

**E.    SDCC Ignores the District Court's Oral Orders About Public Documents**

In connection with its second suppression order, the district court prohibited petitioners from selectively quoting judicial records and other public documents, but left intact their right to republish such documents *in full*; in connection with its third order, the district court prohibited petitioners from republishing public documents *at all*, either in whole or in part.[53] Both restraints are unconstitutional.[54]

SDCC does not defend the restraints' constitutionality. Instead, SDCC denies their existence.[55] But as petitioners have already explained,[56] during the hearing that yielded the second order, the ban on selective quotation was articulated in this exchange:

> **[Counsel]:** … I think I heard … quotations are okay provided there is a link to the full document …
>
> **The Court:** No. No. What I said is you can re-publicize it by printing it in full or linking it to a full copy.[57]

---

[53] *See* Petition 10-11.

[54] *See* Petition 39-40.

[55] *See* Answer 38.

[56] *See* Petition 11.

[57] July 14 Transcript at 28:16-23.

And during the hearing that yielded the third order, the district court took away even the right to re-publish in full: "now I'm basically saying you post no documents about the issues in the case—no comment, no postings."[58]

Petitioners' demonstration that the public-documents restraints are unconstitutional stands unanswered.

## F. The District Court's Explanation of the Disclaimer Requirement Has Nothing to Do with a Threat to the Administration of Justice

In addition to constraining petitioners to remain silent when they would rather have spoken, the district court also compelled them to speak when they would rather have remained silent by "prominently" displaying a "disclaimer"—which is a further constitutional violation.[59] SDCC dismisses petitioners' critique of the disclaimer requirement as "nonsense in light of the District Court's careful explanation of the serious and imminent threat to the administration of justice."[60] But SDCC does not include a citation to any such explanation—because none was ever given.

---

[58] September 21 Transcript at 108:19-21.

[59] *See* Petition 11-14, 40-42.

[60] *See* Answer 39.

The district court gave *no* explanation until months after the disclaimer requirement was imposed. And the explanation it eventually gave makes no mention of any threat to the administration of justice:

> It was intended to be helpful, originally, so that there was a standard response so the public knows, okay, they can't talk about it; I'll go and look at the media or the newspapers or I will look at the court docket or whatever.[61]

What would have *helped* petitioners is *permission* to say "they can't talk about it" when and to whom they choose. The *mandatory* disclaimer requirement that petitioners got instead should be undone because it: (1) inflicts further "constitutional harm" by forcing them "to speak rather than to remain silent";[62] (2) counterproductively incites further discussion about the case;[63] and (3) exposes petitioners to senseless harassment by SDCC.[64]

---

[61] September 21 Transcript at 91:23-92:2.

[62] *See Axson-Flynn v. Johnson*, 356 F.3d 1277, 1284 n. 4 (10th Cir. 2004).

[63] *See* Petition 41.

[64] *See, e.g.*, Answer 32-35. SDCC's request for fees under the third suppression order seeks $41,524 for fees mostly incurred "closely monitor[ing]" compliance with the disclaimer requirement, *see* ECF Doc. 207-1 at 7:6, and arguing that however much petitioners did to comply, it was not enough, *see* ECF Doc. 269-3 at 6:7; ECF Doc. 207-1 at 7-13, 15-17.

## III.   CONCLUSION

SDCC's efforts to vindicate the district court's prior restraints fail, across the board. Because those restraints are clearly unconstitutional, this Court should exercise its mandamus jurisdiction and correct the constitutional abuses.

DATED: October 9, 2017        /s/ L. Rex Sears
                                                 MICHAEL I. KATZ
                                                 *mkatz@mabr.com*
                                                 L. REX SEARS
                                                 *rsears@mabr.com*
                                                    **MASCHOFF BRENNAN PLLC**
                                                 20 Pacifica, Suite 1130
                                                 Irvine, California 92618
                                                 Telephone: (435) 252-1360

                                                 *Attorneys for Defendants–Petitioners*

## CERTIFICATE OF COMPLIANCE

1.     This reply complies with the type-volume limitation of Federal Rule of Appellate Procedure 21(d) because the reply contains 3,898 words.

2.     This petition complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this petition has been prepared in proportionally spaced roman-style typeface using Microsoft Word in 14-point Book Antiqua font.

DATED: October 9, 2017                     */s/ L. Rex Sears* _____

                                                                 *Attorney for Defendants–Petitioners*

## CERTIFICATE OF SERVICE

I, L. Rex Sears, counsel for defendants-petitioners Dan Farr Productions, Daniel Farr, and Bryan Brandenburg, certify that on this 9th day of October, 2017, the foregoing **REPLY IN SUPPORT OF PETITION FOR WRIT OF MANDAMUS** was filed electronically with the U.S. Court of Appeals for the Ninth Circuit by means of the Court's CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

DATED: October 9, 2017          /s/ *L. Rex Sears*

*Attorney for Defendants–Petitioners*